**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**LAURIE BREYETTE,**

                 **Plaintiff,**                 **8:13-cv-366**
                                                                    **(GLS)**

                    v.

**COMMISSIONER OF SOCIAL SECURITY,**

                 **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Anderson Lamb and Associates PC<br>PO Box 1624<br>Burlington, VT 05402-1624 | ARTHUR P. ANDERSON, ESQ. |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN<br>United States Attorney<br>100 South Clinton Street<br>Syracuse, NY 13261 | SIXTINA FERNANDEZ<br>Special Assistant U.S. Attorney |
| Steven P. Conte<br>Regional Chief Counsel<br>Social Security Administration<br>Office of General Counsel, Region II<br>26 Federal Plaza, Room 3904<br>New York, NY 10278 | |

**Gary L. Sharpe**
**Chief Judge**

## **MEMORANDUM-DECISION AND ORDER**

### **I. Introduction**

Plaintiff Laurie Breyette challenges the Commissioner of Social Security's denial of Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Breyette's arguments, the Commissioner's decision is affirmed and Breyette's complaint is dismissed.

### **II. Background**

On May 26, 2009, Breyette filed an application for SSI under the Social Security Act ("the Act"), alleging disability since July 14, 2003. (Tr.[1] at 124, 167-70.)[2] After her application was denied, (*id.* at 125-30), Breyette requested a hearing before an Administrative Law Judge (ALJ), (*id.* at 132-33), which was held on May 20, 2011, (*id.* at 100-23). On August 15, 2011, the ALJ issued an unfavorable decision denying the requested benefits, (*id.* at 85-99), which became the Commissioner's final determination upon the Social Security Administration Appeals Council's denial of review, (*id.* at 1-

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 10.)

[2] At the hearing, Breyette amended her onset date to May 26, 2009. (Tr. at 117-18.)

4).

Breyette commenced the present action by filing her complaint on April 1, 2013, wherein she sought review of the Commissioner's determination. (*See generally* Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 9, 10.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 17, 18.)

### III. <u>Contentions</u>

Breyette contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 17, Attach. 1 at 4-6.) Specifically, Breyette claims that: (1) the ALJ's determination of Breyette's residual functional capacity (RFC) was unsupported by substantial evidence because she failed to make a finding on the frequency and duration of Breyette's need to use the bathroom; and (2) the ALJ committed legal error by failing to obtain the opinion of a vocational expert (VE) in making her step four determination. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and her decision is also supported by substantial evidence. (Dkt. No. 18 at 6-9.)

3

### IV. **Facts**

The court adopts the parties' undisputed factual recitations. (Dkt. No. 17, Attach. 1 at 4; Dkt. No. 18 at 1.)

### V. **Standard of Review**

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[3] is well established and will not be repeated here. For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

### VI. **Discussion**

#### A. **RFC Determination**

First, Breyette contends that, in light of her irritable bowel syndrome (IBS),[4] the ALJ's RFC determination is tainted by legal error and

---

[3] 42 U.S.C. § 1383(c)(3) renders § 405(g) applicable to judicial review of SSI claims.

[4] Despite her claim that she has also has been diagnosed with Crohn's disease, (Tr. at 111-12), the ALJ found that the record only supported a confirmed diagnosis of IBS, and not Crohn's disease; Breyette does not challenge that finding. (Tr. at 94, 95; Dkt. No. 17,

4

unsupported by substantial evidence because she failed to make a finding as to the frequency and duration of Breyette's bathroom visits. (Dkt. No. 17, Attach. 1 at 4-6.) The Commissioner counters, and the court agrees, that the ALJ's RFC determination is supported by substantial evidence. (Dkt. No. 18 at 6-7.)

A claimant's RFC "is the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain. *Id.* § 416.945(a)(3). An ALJ's RFC determination must be supported by substantial evidence[5] in the record. *See* 42 U.S.C. § 405(g). If it is, that determination is conclusive and must be affirmed upon judicial review. *See id.*; *Perez v. Charter*, 77 F.3d 41, 46 (2d Cir. 1996).

Here, the ALJ found that Breyette retained the RFC to perform a full range of work at all exertional levels, but that her nonexertional limitations

---

Attach. 1 at 5.)

[5] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

required that she have regular access to a bathroom. (Tr. at 92.) Contrary to Breyette's assertions, in determining Breyette's RFC, the ALJ did consider the frequency and duration of Breyette's bathroom visits. Indeed, the ALJ noted that Breyette claimed that "she had incontinence of stools and explosive bowel movements on the average three to four per day," and that "[d]uring diarrhea flare-ups, she is in the bathroom three to four hours." (*Id.* at 94, 95.) Ultimately, however, the ALJ concluded that the record medical evidence indicated that, with medication, Breyette "only has two bowel movements a day," and that "regular bathroom breaks should accommodate her bathroom needs." (*Id.* at 94.)

These findings are supported by substantial evidence. First, as the ALJ noted, the record medical evidence is devoid of complaints of incontinence. (*Id.* at 94.) As relevant to the time period at issue, a March 2008 consultation letter from Dr. Jeffrey Gretz, Breyette's treating gastroenterologist, to Dr. John Miller, Breyette's primary physician, indicates that Breyette was complaining of abdominal pain, as well as loose bowel movements occurring two times per day; Dr. Gretz also indicated a probable diagnosis of IBS. (*Id.* at 357-58.) Breyette next saw Dr. Gretz in June 2008, again complaining about diarrhea four to five times per day, (*id.*

6

at 347), but findings from a May 2008 colonoscopy and a June 2008 CT scan of Breyette's abdomen were normal, and a treatment note from Dr. Miller in September 2008 stated that Breyette's IBS was stable on her current therapy, (*id.* at 348, 350, 353, 362).

The record does not reflect any further treatment until April 2010.[6] Throughout 2010, Breyette continued to complain about abdominal pain and diarrhea, (*id.* at 335, 336), but the medical record evidence indicates that Breyette's condition was improving with increased fiber supplements and medication, her weight was stable, and she did not have any gastrointestinal bleeding, (*id.* at 336, 345). Additionally, another CT scan of Breyette's abdomen in October 2010 was normal. (*Id.* at 333.) Also in 2010, Dr. Nader Wassef performed a consultative internal medicine examination on Breyette and provided a medical source statement concluding only that Breyette "should have access to [a] handicap[ped]

---

[6] At the hearing, the ALJ commented on and asked questions regarding this gap in the record. (Tr. at 108-10.) Breyette did not have an explanation for the gap in treatment, but did not indicate that her counsel failed to obtain treatment records for this time period. (*Id.*) A September 2008 letter from Dr. Gretz to Dr. Miller indicates that Breyette did not complete labs, and that Breyette was to follow-up as needed. (*Id.* at 346.) Additionally, a 2010 treatment note from Dr. Shahanaz Begum implies that the gap in treatment was attributable to a lack of insurance. (*Id.* at 360.)

7

bathroom." (*Id.* at 299.) By 2011, treatment notes indicate that Breyette's condition was "[s]table with occasional bouts," (*id.* at 366), and treatment records from Dr. Gretz reveal that, with increased fiber supplements, "[s]he has less watery bowel movements, which are somewhat more formed no more than two times per day," she continues to have no gastrointestinal bleeding, and that she would follow up only on an as-needed basis, (*id.* at 370).[7]

Significantly, the medical record evidence does not reflect complaints from Breyette that she was experiencing incontinence. Nevertheless, at the hearing, Breyette stated that she suffers from incontinence because, in a previous surgery, there was damage done to her sphincter muscle, (*id.* at 111, 112, 119); the ALJ specifically requested additional documentation regarding these complaints, (*id.* at 121-22). Despite Breyette's assertions at the hearing, treatment records from Dr. George Boolukos, Breyette's

---

[7] In her brief, Breyette contends that "[r]ecords submitted to the Appeals Council after the ALJ's decision show that . . . Breyette reported [fifteen] flares per month in July 2010." (Dkt. No. 17, Attach. 1 at 6.) A review of the cited document, however, indicates that the physician to whom Breyette made this complaint stated that "[t]his lady with chronic condition of inflammatory bowel disease seems to be dependent on Oxycodone. I doubt very much that she has [fifteen] flares per month while she is under Gastroenterology care." (Tr. at 18.)

8

surgeon, document that, in 1993, Breyette underwent a left sigmoid resection with open end to end anastomosis, and that there were no complications or abnormalities during surgery. (*Id.* at 401-02.) Further, colonoscopies performed in later years never indicate any abnormalities with Breyette's sphincter. (*Id.* at 353, 373-74.) This supports the ALJ's conclusion that "[t]he evidentiary record simply does not corroborate [Breyette's] allegation" of incontinence. (*Id.* at 95.)

Breyette, however, contends that the court in *Jackson v. Astrue*, No. 11-CV-6470, 2012 WL 5423708 (W.D.N.Y. Nov. 6, 2012), "found that a claimant's need to use a bathroom for explosive diarrhea was sufficient for it to direct a finding of disability." (Dkt. No. 17, Attach. 1 at 6.) As an initial matter, this is an oversimplification of the court's logic in *Jackson*. There, the court found that the ALJ erred in assessing the claimant's credibility because the record demonstrated that the claimant "consistently reported disabling symptoms of abdominal pain, nausea, vomiting, and diarrhea to her doctors," and that "she experienced these symptoms with a frequency she described as disabling." *Jackson*, 2012 WL 5423708, at *8-10. More importantly, *Jackson* is distinguishable from this case. Unlike in *Jackson*, here, as discussed above, the medical record evidence simply does not

9

support or corroborate Breyette's statements regarding the frequency, duration, or predictability of her bathroom visits. Accordingly, Breyette's contention is without merit, and the ALJ's RFC determination is legally sound and supported by substantial evidence.

B. **Step Four Determination**

Next, Breyette argues that the ALJ erred by failing to obtain VE testimony. (Dkt. No. 17, Attach. 1 at 6.) Specifically, Breyette contends that "[w]hile[] the ALJ found . . . that [Breyette] could return to her former work, there is no vocational evidence that [she] would be able to do so considering the unpredictable nature of her need to use the bathroom." (*Id.*) The Commissioner counters, and the court agrees, that the ALJ was not obligated to obtain VE testimony. (Dkt. No. 18 at 7-9.)

Under the fourth step of the five-step analysis, "the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003) (emphasis omitted). While an expert "is often called upon to explain the requirements of particular jobs, step four of the analysis does not require that an ALJ consult an expert." *Petrie v. Astrue*, 412 F. App'x 401, 409 (2d Cir. 2011) (internal quotation marks and

10

citation omitted); *see* 20 C.F.R. § 416.960(b)(2) ("[A] vocational expert or specialist *may* offer expert opinion testimony . . . about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." (emphasis added)).  A vocational expert is necessary only if a claimant's nonexertional impairments "significantly limit[ ] the range of work permitted by [the claimant's] exertional limitations to the point that the medical-vocational guidelines did not adequately reflect [the claimant's] condition."  *Whipple v. Astrue*, 479 F. App'x 367, 371 (2d Cir. 2012); *see Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986); *see also Torres v. Astrue*, No. 11-CV-05260, 2013 WL 802440, at *14-15 (E.D.N.Y. Mar. 5, 2013).

    Here, as discussed above, *see supra* Part VI.A, Breyette failed to establish that her need to use the bathroom was unpredictable, or that her bathroom visits were exceptionally frequent or of long durations.  Thus, even though Breyette suffers from a nonexertional impairment, the ALJ was not required to call a VE because Breyette did not prove that the impairment "significantly diminish[ed her] ability to work . . . so that [she] is

11

unable to perform the full range of employment indicated by the medical vocational guidelines." *Bapp*, 802 F.2d at 603 (noting that "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert"). Accordingly, the ALJ did not err in finding that Breyette is capable of performing her past relevant work in the absence of a VE's opinion.

### C. Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Breyette's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

June 5, 2014
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
Chief Judge
U.S. District Court